UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DINA MARIE TRAUB,
           Plaintiff,

                                        Case No. 14-13026
      v.                            HON. TERRENCE G. BERG

TARGET CORPORATION,
           Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DKT. 8)**

Plaintiff Dina Marie Traub slipped and fell at the Target store in Dearborn Heights, Michigan. She is now suing Defendant Target Corporation on the ground that Target's negligence caused her to fall and injure herself. On May 6, 2015, Target filed a motion for summary judgment (Dkt. 8). After the motion was fully briefed, the Court held argument on January 5, 2016. For the reasons explained below, Target's motion for summary judgment is **GRANTED**.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff is a resident of Canton, Michigan. (Dkt. 1, p. 1). Somewhere between 8 a.m. and 9:30 a.m. on June 8, 2012, she visited a Target store in Dearborn Heights, Michigan looking for a baby gift for a friend. (Plaintiff Dep., Dkt. 10, Ex. A).[1] Before the incident in question, Plaintiff was going to cross from what she believes was the kids' clothing section to the boys' or ladies' clothing

---

[1] The parties provided different excerpts of the same depositions. Accordingly, the Court will note the location of each excerpt in the record. For future purposes, the parties are reminded of the Court's motion practice guidelines that require that parties file the full text of any source cited in support of proffered facts in a summary judgment motion. Motion Practice Guideline F; *see also Fantroy v. Dean Vann*, No. 14-13341, Dkt. 21 (E.D. Mich. June 15, 2015).

section ("boys' clothing section") on her way to the checkout line.  (*Id.* at 37:2-7; Plaintiff Incident Diagram, Dkt. 8, Ex. C).  As she stepped onto the tile aisle between the two sections, Plaintiff's foot slipped and she fell onto her right arm and shoulder in the carpeted area of the boys' clothing section.  (Plaintiff Dep., Dkt. 10, Ex. A, 45:10-13).

After she fell, Plaintiff noticed that her feet were wet (*id.* at 46:7-11) but she did not check the aisle where she fell to see whether it was wet (*id.* at 46:22-25).  Before crossing the aisle, however, she did not see standing water or a visible puddle; she only noticed that the floor was shiny.  (Plaintiff Dep., Dkt. 8, Ex. B, 47:1-11).  Target employs an outside company to buff and shine its floors nightly, a process that sometimes extends until 6 or 7 a.m. in the morning.  (Aaron Custer Dep., Dkt. 10, Ex. C, 13:11-21).  While she describes the floor as shiny, Plaintiff acknowledges that there was no "wet floor" sign on the aisle where she fell, or any mops or water buckets nearby.  (Plaintiff Dep., Dkt. 10, Ex. A, 46:15-18).  After she fell, she saw a "wet floor" sign on an aisle perpendicular to the one where she fell, some 10 to 15 feet away.  (*Id.* at 38:19-39:11).

A Target employee working in a section across from the boys' clothing section then came over and asked Plaintiff if she was okay.  (*Id.* at 39:20-41:16).  Plaintiff told the employee that the "floor was very slippery and that [that] really hurt."  (*Id.* at 43:5-6).  Plaintiff also told her that the floor was "very wet" (*id.* at 41:18) and that she had to go (*id.* at 43:15-16).  The employee called for a manager on her walkie-talkie but Plaintiff left before a manager came over.  (*Id.* at 41:18-25).  Plaintiff says

that she left immediately after she fell because she was in pain and embarrassed. (*Id.* at 50:20-23). Target did not independently create an injury report and states that it does not have video surveillance of the incident. (Target's Response to First Request to Produce, Dkt. 8, Ex. D).

Target explains that it has a procedure in place for inspecting and cleaning spills. Once an hour, Target Protection Specialists ("TPSs") are required to walk the store looking for any safety issues, including spills. (Aaron Custer Dep., Dkt. 10, Ex. C, 15:19-25). Managers, called leaders on duty ("LODs") conduct the same inspection. Furthermore, all employees are expected to be aware of potential safety hazards like spills. (Aaron Custer Dep., Dkt. 8, Ex. E, 23:14-21). As explained by a Target employee:

> If a team member comes across [a] spill, they stand there, use the walkie to call other people to assist. The person never leaves to call other people to assist. The person never leaves the spill by itself. There's always a team member. We come, clean up the spill, and we put the wet floor sign out there in case there's any moisture left.

(Yvette Brock Dep., Dkt. 10, Ex. D, 17:6-12). Target claims that it places warning cones at the site of a spill, but that it does not post warning cones to alert costumers that another, nearby area is wet.[2] (*Id.* at 25:11-20).

Plaintiff injured her right shoulder in the fall and she says that she now lives with constant pain. (Plaintiff Dep., Dkt. 10, Ex. A, 8:11-21). She states that she can no longer lift heavy objects, play sports with her children, or go bowling with

---

[2] At this store, Target used yellow "warning cones" as "wet floor" signs. (Aaron Custer Dep., Dkt. 8, Ex. E, 18:10-20).

3

her family. (*Id.* at 12-19). Because of this injury, Plaintiff filed suit in the Wayne County Circuit Court on May 21, 2014 alleging that Target was negligent in failing to maintain its premises.[3] (Dkt. 1, Ex. 2). On August 4, 2014, Target removed the case to this Court pursuant to 28 U.S.C. § 1446(b)(3). (Dkt. 1). On May 6, 2015, Target filed for summary judgment. (Dkt. 8).

## II.  ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

---

[3] Case No. 2014-14-006624-NO.

4

Once the moving party has met its burden, the non-moving party "'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009)).

### B. Discussion

"In [an] action arising under federal diversity jurisdiction, we apply the substantive law of Michigan, as the forum state." *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012). Under Michigan law, to establish a prima facie claim of negligence, "a plaintiff must introduce evidence sufficient to prove that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach of its duty was a proximate cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *Berryman v. K Mart Corp.*, 193 Mich. App. 88, 91-92 (1992). "A prima facie case of negligence may be established by use of legitimate inferences, as long as sufficient evidence is introduced to take the inferences 'out of the realm of conjecture.'" *Id.* at 92 (citing *Ritter v. Meijer, Inc.*, 128 Mich. App. 783, 786 (1983)).

Target clearly owed a duty to Plaintiff because as a customer, she was an invitee. *See Gainer v. Wal-Mart Stores East, L.P.*, 933 F. Supp. 2d 920, 925 (E.D. Mich. 2013). But "[i]nvitors are not absolute insurers of the safety of their invitees." *Id.* (internal quotation marks omitted). Storekeepers need only "provide reasonably safe aisles for customers." *Clark v. Kmart Corp.*, 465 Mich. 416, 419 (2001). A

storekeeper is "liable for injury resulting from an unsafe condition either [1] caused by the active negligence of himself and his employees or, if otherwise caused, [2] where known to the storekeeper or [3] is of such a character or has existed a sufficient length of time that he should have had knowledge of it." *Id.* (citing *Serinto v. Borman Food Stores*, 380 Mich. 637, 640-41 (1968)). "The mere fact that a customer slips and is injured on the premises of a storekeeper does not constitute actionable negligence." *Gainer*, 933 F. Supp. 2d at 925 (citing *J.K. Winfrey v. S.S. Kresge Co.*, 6 Mich. App. 504, 507 (1967)).

Plaintiff raises various arguments alleging that Target was responsible for the wet tile floor. First, she claims that Target had lax cleaning practices since it did not have a full-time employee tasked with cleaning spills, but only had a Target Protection Specialist or Leader on Duty walk around the store once an hour. This argument fails to address the need to show that Target caused the spill through active negligence, or was aware of the spill, or that the spill existed for such a long period of time that Target should have known of it.

Plaintiff's second argument fares no better. She argues that Target had recently mopped a large area of the tile floor to clean a spill "likely caused by spilled food or drink," including the aisle where she fell, and therefore was responsible for the wet floor. (Dkt. 10, p. 9). This assertion of fact is not supported in the record. No witness testified that a Target employee had recently mopped the aisle in the area where Plaintiff fell. Plaintiff testified that she did not see any "wet floor" sign posted near the spot where she fell. (Plaintiff Dep., Dkt. 10, Ex. A, 46:15-18). After

she fell, however, Plaintiff did see a wet floor sign that was located some 10 to 15 feet away from where she fell, in a different aisle. (*Id.* at 38:19-39:11). Target claims that it posts a warning cone at the site of a spill, but it does not post additional warning cones in other locations to alert customers that a different area nearby is wet. (Aaron Custer Dep., Dkt. 8, Ex. E, 25:11-20). Upon observing a spill, Target instructs its employees not to leave the area, to obtain assistance in cleaning the spill, and to post a warning cone at the site of the spill. (Yvette Brock Dep., Dkt. 10, Ex. D, 17:6-12). Plaintiff has not provided any evidence showing that Target posts warning cones at any location other than a spill site. Plaintiff has also not provided any evidence to show that Target mopped the area where she fell and then failed to post a warning cone. While negligence may be established through drawing legitimate inferences from the available evidence, it cannot be established by mere conjuncture. In this case, there is no evidence that a spill existed in the area where Plaintiff fell, nor is there evidence that Target created the spill, was aware of the spill, or that the spill had existed for a long-enough period of time that a reasonable storekeeper would have been aware of it.

Plaintiff next argues that Target knew about the spill because there was a Target employee in a nearby section of the store across from where she fell. Plaintiff states that she did not see standing water or a visible puddle in the aisle before she fell; she only saw that the floor had been buffed and appeared to be shiny. (Plaintiff Dep., Dkt. 8, Ex. B., 47:1-11). If Plaintiff, who was the person closest to the slippery area, having just crossed the aisle, did not see the spill either

before or after she fell, the evidence does not support a fair inference that an employee in a different section of the store would have had knowledge of the spill simply by virtue of being in the vicinity. And Plaintiff has provided no other evidence that raises a question of fact as to whether Target knew of the spill.

Lastly, Plaintiff argues that Target should have known about the spill, under a constructive knowledge theory. This requires that an unsafe condition be of "such a character or has existed a sufficient length of time that [the defendant] should have had knowledge of it." *Clark v. Kmart Corp.*, 465 Mich. at 419. According to the record, Plaintiff knew that the tile floor was wet because her feet were wet after she fell. (Plaintiff Dep., Dkt. 10, Ex. A, 46:7-11). But Plaintiff did not examine the tile floor to see whether there was a spill (*id.* at 46:22-25), and she did not see standing water or a visible puddle prior to stepping in the aisle (Plaintiff Dep. Dkt. 8, Ex. B, 47:1-11). Thus, there is scant evidence in the record to support a finding that the aisle was wet. And even were the Court to conclude that there is a genuine issue of material fact as to whether the aisle was actually wet, Plaintiff would still have to provide evidence that the water was present for a sufficient length of time to infer that Target had knowledge about it. In *Eby v. Target Corp.*, No 13-10688, 2014 WL 941906, at *4 (E.D. Mich. Mar. 11, 2014), the court held that the defendant did not have constructive notice where, although there was evidence of a puddle on the floor, the plaintiff did not provide evidence that the puddle had "existed for a considerable time." The same was true in *Gainer*. *See* 933 F. Supp. 2d at 932-33. There the court stated that "[n]othing in the record indicates when

the water accumulated on the floor, how much water was on the floor, or what caused the asserted accumulation of water. Without evidence establishing how long the dangerous condition existed, it is impossible to rationally conclude that the condition existed for a length of time sufficient to have enabled a reasonably careful storekeeper to discover it." *Id.* at 932-33.

Here, there is but little evidence supporting Plaintiff's claim that the floor was actually wet, and no evidence indicating how long the floor had been wet for prior to her unfortunate fall. Further, Plaintiff left the store without making an injury report, and no video evidence or witness statements shed further light on this issue. Under these factual circumstances, "it is impossible to rationally conclude" that Target had constructive notice of the spill.

For these reasons, Plaintiff has failed to make out a prima facie claim of negligence.

## III. CONCLUSION

For the reasons explained above, Defendant Target's motion for summary judgment (Dkt. 8) is **GRANTED**.

**SO ORDERED.**

Dated: March 9, 2016 　　　　　　　　　　s/Terrence G. Berg
　　　　　　　　　　　　　　　　　　　　TERRENCE G. BERG
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on March 9, 2016, using the CM/ECF system, which will send notification to all parties.

　　　　　　　　　　　　　　　　　　　　s/A. Chubb
　　　　　　　　　　　　　　　　　　　　Case Manager